# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. M-21 650 -SM
a cracked black iPhone, currently in custody )
at HSI Oklahoma City )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Western____ District of ____Oklahoma____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841 | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Cristina Busbee*
Applicant's signature

Cristina Busbee, Special Agent HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 11/15/2021

*/s/ Suzanne Mitchell*
Judge's signature

City and state: Oklahoma City, Oklahoma

Suzanne Mitchell, United States Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CRACKED BLACK IPHONE CELLULAR PHONE WITHOUT A SIM CARD, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE HOMELAND SECURITY INVESTIGATIONS OKLAHOMA CITY PROPERTY ROOM. | Case No. __M-21-650-SM__ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Cristina Busbee, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device, as further described in Attachment A hereto—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since April 2019. I am presently assigned to the HSI office in Oklahoma City, Oklahoma (hereinafter referred to as HSI Oklahoma City).

3. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. §

2516.  I am authorized to conduct criminal investigations of violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4. I have been involved in a wide variety of investigative matters.  Among other things, I am responsible for conducting investigations into violations of federal criminal laws, including the smuggling of goods into the United States, as well as aiding in unlawful manufacturing, possession, and distribution of controlled substances.  I have received approximately 26 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws.  I have arrested, interviewed, and debriefed numerous individuals who have been involved with and have personal knowledge of smuggling goods into the United States, aiding in unlawful manufacturing, possession, and distribution of controlled substances, as well as, the amassing, spending, converting, transporting, distributing, laundering, and concealing of proceeds from criminal activity.  I have testified in judicial proceedings concerning the prosecution of violations of laws related to the smuggling and distribution of contraband, including controlled substances.  I have been the affiant of numerous federal search warrants, which I have used to further criminal investigations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is a cracked black iPhone cellular phone without a SIM Card, hereinafter referred to as the "Device," as further described in Attachment A, hereto. The Device is currently located in secure evidence storage at the Homeland Security Investigations office, 3625 NW 56th Street, Oklahoma City, OK 73112.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. The Device was seized during a traffic stop involving Daniel BRAVO-PRIANTE and Fernando GASCA. As described in more detail below, BRAVO-PRIANTE and GASCA are currently under investigation by HSI for violations of 21 U.S.C. § 841, possession of methamphetamine and fentanyl with intent to distribute, and 21 U.S.C. § 846, drug conspiracy.

9. On October 12, 2021, at approximately 0245 hours, Oklahoma Highway Patrol (OHP) Trooper Brady Webb conducted a traffic stop of a red 2006 Toyota Corolla bearing California license plate 5VSL968 on I-40 eastbound just west of Morgan Road in Canadian County, OK. Trooper Webb conducted the traffic stop after observing the vehicle speeding.

10. Trooper Webb approached the vehicle and encountered the driver, Fernando GASCA, and passenger, Daniel BRAVO-PRIANTE. Trooper Webb immediately noticed an odor of raw marijuana emanating from the vehicle. Trooper Webb informed GASCA as to the reason for the stop, that he would be receiving a warning, and requested GASCA to exit the vehicle and be seated in the front passenger seat of his patrol unit. Trooper Webb engaged GASCA in casual conversation and GASCA advised Trooper Webb that he and BRAVO-PRIANTE were traveling to Florida to go to Disney World. Trooper Webb asked GASCA about the odor of marijuana in the vehicle, and GASCA advised there had been marijuana in the car at one point during their trip.

11. A probable cause search based on the odor of raw marijuana revealed one vacuum sealed bundle of a white crystal substance under the front passenger seat where BRAVO-PRIANTE had been seated. The substance contained an approximate gross weight of one pound, and field tested positive for methamphetamine.[1] Also located in the vehicle under the driver seat where GASCA had been seated were two vacuum sealed bundles containing blue pills that Trooper Webb believed through his training and experience to be fentanyl. The bundles contained a combined approximate gross weight of five pounds.

---

[1] The substance was also later laboratory tested and confirmed to be methamphetamine with a weight of 437 g ± 1 g, and a purity of 100% ± 6%.

12. BRAVO-PRIANTE and GASCA were arrested and transported to the Canadian County Jail.

13. During a post-arrest interview later that night, BRAVO-PRIANTE stated that on October 9, 2021, he had made contact with an unknown male in Mexico who advised BRAVO-PRIANTE to travel to Long Beach, California to pick up the fentanyl. BRAVO-PRIANTE stated that he later contacted GASCA and asked him if he wanted to travel to Jacksonville, Florida to transport the fentanyl. BRAVO-PRIANTE said he was going to be paid $15,000 for the transport and offered GASCA $7,500 to make the trip with him. BRAVO-PRIANTE said that GASCA agreed and BRAVO-PRIANTE picked GASCA up at his residence on October 10, 2021. BRAVO-PRIANTE stated that he did not know he was traveling with the additional pound of methamphetamine until he arrived at a gas station in Arizona.

14. During a post-arrest interview, GASCA told investigators that he had invited BRAVO-PRIANTE to go on a trip with him to Disney World in Florida. GASCA stated he was unaware that there were any drugs in the vehicle.

15. Based on the aforementioned facts, there is probable cause to believe that BRAVO-PRIANTE and GASCA committed violations of 21 U.S.C. § 841, possession of methamphetamine and fentanyl with intent to distribute, and 21 U.S.C. § 846, drug conspiracy.

16. The Device was seized from BRAVO-PRIANTE and GASCA during their arrest. Specifically, the Device was located in the driver's door panel of the vehicle the

men were in.  The Device is currently located in secure evidence storage at the Homeland Security Investigations office, 3625 NW 56th St., Oklahoma City, OK 73112.  In my training and experience, I know that the Device has been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the Device first came into the possession of investigators.

17.     Based on my training, experience, and research, I know that the Device is a wireless telephone.  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

18. From my training and experience, I know that possession of drugs with the intent to distribute is a conspiratorial crime. Individuals who engage in these crimes typically do so in groups with the assistance of others. These criminals often use their cell phones to communicate with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers or dealers are often saved in the individual's phone. Furthermore, based on his own admission during a post-arrest interview, BRAVO-PRIANTE used a cellular phone to communicate with a contact in Mexico about the transportation of the drugs that were found at the time of his arrest. Having access to the Device's contents may allow investigators to understand who organizes this drug trafficking, and whether BRAVO-PRIANTE and/or GASCA are involved in a wider conspiracy.

19. An examination can reveal the approximate location of the Device and the user by associating a specific date and time with the following: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the Device's unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been

viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when it was used. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.

> Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.
>
> d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. Furthermore, I know that when an individual uses an electronic device, it can serve both as an instrumentality for committing the crime (such as contacting sources of drugs to make arrangements for picking up drugs or dropping off payments, or vice versa), and also as a storage medium for evidence of the crime.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Cristina Busbee*
Cristina Busbee
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on November 15, 2021:

*Suzanne Mitchell*
Suzanne Mitchell
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a cracked black iPhone cellular phone without a SIM Card, hereinafter the "Device." The Device is currently located in secure evidence storage at the Homeland Security Investigations` property room.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**Cracked black iPhone** cellular phone without a SIM Card:



## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841 and 21 U.S.C. § 846 involving BRAVO-PRIANTE and GASCA, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs smuggled or trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording BRAVO-PRIANTE and GASCA's schedules or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.